1  JULIO RAMOS (No. 189944)
   LAW OFFICES OF JULIO J. RAMOS
2  35 Grove Street, Suite 107
   San Francisco, California 94102
3  Telephone:    (415) 948-3015
   Facsimile:    (415) 469-9787
4

   E-filing

   *FILED*

   *DEC 17 2010*

   RICHARD W. WIEKING
   CLERK, U.S. DISTRICT COURT
   NORTHERN DISTRICT OF CALIFORNIA

5  Attorneys for Plaintiff RENE RAMOS

                 **UNITED STATES DISTRICT COURT**
6
               **NORTHERN DISTRICT OF CALIFORNIA**
7

8  RENE RAMOS on behalf of himself and all  )  Case No.
   others similarly situated,               )
9                                            )  **CV10    5772    JCS**
             Plaintiffs,                     )  **CLASS ACTION COMPLAINT**
10                                           )
                                             )
11       vs.                                 )      1.  CALIFORNIA BUSINESS &
                                             )          PROFESSIONS CODE §17200
12  MEAD JOHNSON and COMPANY LLC.,           )          ET. SEQ.
    and DOES 1 through 100 inclusive,        )      2.  MISLEADING AND
13                                           )          DECEPTIVE ADVERTISING
             Defendants.                     )      3.  UNJUST ENRICHMENT
14                                           )
                                             )  **DEMAND FOR JURY TRIAL**
15                                           )
                                             )
16                                           )
                                             )
17                                           )
                                             )
18                                           )

19          Plaintiff RENE RAMOS (hereinafter "Plaintiff") is a father of two children. He is
20
    purchaser of ENFAMIL LIPIL ® distributed and sold by MEAD JOHNSON and COMPANY
21
    LLC., and as representative of a class of similarly situated consumers under Rule 23 of the
22
    Federal Rules of Civil Procedure brings this Complaint to protect the public from unfair,
23
    deceptive unlawful and/or fraudulent business practices, against the above-named defendants
24
    (collectively, "Defendants"), and upon personal knowledge as to his own actions, and upon
25
    information and belief with respect to all other allegations.
26

27

28  **CLASS ACTION COMPLAINT**

## I. NATURE OF THE ACTION

1. Mead Johnson produces, markets and sells Enfamil® brand infant formula (the "Product"), which contains LIPIL®, Mead Johnson's name for a blend of two lipid fatty acids found in breast milk, docosahexaenoic acid ("DHA") and arachidonic acid ("ARA"). Mead Johnson claims on the label of its Product and in other promotional materials, as detailed herein, that the DHA and ARA contained in LIPIL® promotes brain and eye development in infants.

2. Mead Johnson's Product is heavily marketed in the Spanish-speaking community.

3. Mead Johnson sought to increase sales by falsely or misleadingly representing to consumers in both English and Spanish that the Product was the only infant formula product that contained DHA and ARA and that the Product was the only infant formula product that was clinically proven to improve brain and eye function in infants.

4. Both of these claims are deceptive and likely to deceive consumers. In fact, other brands of infant formula, including lower-priced store brands, contain DHA and ARA in amounts equal to or greater than those contained in Mead Johnson's Product and are no less effective than Mead Johnson's Product in promoting brain and eye development in infants.

5. Moreover, Mead Johnson failed to disclose to consumers the material facts that: (1) the formulation of its Product has changed 19 times since its purported ability to promote brain and eye development was clinically tested, (2) the testing in question only compared the Product (i.e., Enfamil® with LIPIL®) to a prior formulation of Enfamil® without DHA and ARA and no other brands, and (3) the testing in question actually establishes that any infant formula product with the same levels of DHA and ARA as that in Mead Johnson's Product would be equally effective in promoting brain and eye development in infants.

6. Because of Mead Johnson's misrepresentations and omissions regarding the nature of its Product as justifying a premium price for the Product,

-1-

**CLASS ACTION COMPLAINT**

1  Plaintiff and Class members paid more for Mead Johnson's Product than they

2  otherwise would have, mistakenly believing that they were purchasing the only

3  infant formula that provides the blend of nutrients essential to the brain and eye

4  development of their babies. California law prohibits this conduct.

5  **II. PARTIES**

6      7. Plaintiff Rene Ramos is an individual consumer who, at all times

7  material hereto, was a resident in the State of California, and therefore is a "citizen" of

8  California for purposes of diversity. He has purchased the Enfamil products at issue at

9  Walgreen stores within this judicial district.

10      8. Mead Johnson & Company is a subsidiary of Mead Johnson Nutrition

11  Company, and is organized and existing under the laws of the State of Delaware

12  with its principal place of business located at 2400 West Lloyd Expressway,

13  Evansville, Indiana 47721. For the purposes of diversity jurisdiction, Mead

14  Johnson & Company may be considered a "citizen" of either Delaware or Indiana.

15  At all times relevant hereto, Mead Johnson & Company was and is doing business

16  within this District either directly or indirectly through the sales of its products in

17  this District.

18      9. At all times herein mentioned, the employees of Mead Johnson, its

19  subsidiaries, affiliates and other related entities, were the agents, servants and

20  employees of Mead Johnson, and at all times herein mentioned, each was acting

21  within the purpose and scope of said agency and employment. Whenever reference

22  in this Complaint is made to any act or transaction of Mead Johnson, such

23  allegation shall be deemed to mean that the principals, officers, directors,

24  employees, agents, and/or representatives of Mead Johnson committed, knew of,

25  performed, authorized, ratified and/or directed such act or transaction on behalf of

26  Mead Johnson while actively engaged in the scope of their duties.

27

28  **CLASS ACTION COMPLAINT**

-2-

## III. JURISDICTION AND VENUE

10. Jurisdiction of this Court is founded under the Class Action Fairness Act of 2005, as the amount in controversy is over $5 million and pursuant to 28 USC Sections 1332(d), 1453, 1711-1715.

11. Venue as to the Defendants is proper in this judicial district pursuant to the provisions of the Class Action Fairness Act. Each Defendant maintains an office, transacts business, has an agent, or is found in the County of Alameda. Each Defendant is within the jurisdiction of the Court for purposes of service of process, and many of the unfair, unlawful and/or fraudulent acts committed and pursuant to the actions hereinafter alleged had a direct effect on purchasers of Enfamil within the State of California. The trade and commerce hereinafter described is carried on, in part, within the State of California and, more particularly within the County of San Francisco. The damages available in this case exceeds $5 million dollars and thus this action arises under the Class Action Fairness Act. There are more than 100 class members.

12. The defendants. Venue in this District is proper pursuant to 28 U.S.C. § 1391 because a significant part of the events giving rise to the claims occurred in this District, and Mead Johnson is subject to personal jurisdiction in this District.

## IV. FACTUAL ALLEGATIONS

### Mead Johnson And Its Competition In The Infant Formula Market

13. Mead Johnson is a global manufacturer and producer of infant formula products, with approximately $2.8 billion in sales revenue in 2008 alone.

14. Mead Johnson has advertised, marketed, distributed and sold the Product since at least 2005. A material focus of Mead Johnson's promotion of the Product is the presence of LIPIL®, which is nothing more than Mead Johnson's name for a blend of DHA and ARA, two lipid fatty acids that are naturally found in breast milk and which Mead Johnson claims promote brain and eye development in infants.

-3-

**CLASS ACTION COMPLAINT**

1    15. Recently, Mead Johnson has seen significant competition from lower priced

2    brands, particularly store brands. This is evidenced by Mead Johnson Nutrition Company's

3    Initial Public Offering (IPO) Prospectus, SEC Registration No. 333-156298, dated February

4    10, 2009 and available at http://

5    www.sec.gov/Archives/edgar/data/1452575/000119312509025593/d424b4.htm:

6    "In periods of economic uncertainty, consumers tend to shift their purchases from our higher-

7    priced premium products to lower-priced products, including private label and store brand

8    products. We believe private label and store brand product manufacturers have

9    continued to gain market share in the United States over the past 12 months." Prospectus at

10   16. "[W]e face significant competition from domestic producers and

11   private label, store and economy brand manufacturers." *Id.* at 48.

12   16.  In view of this competition, Mead Johnson sought to "sustain the

13   strength of [its] brands" by improving "consumer perception" of the "superior

14   nutritional benefits" of their Product. *Id.*

15   17. However, rather than actually provide superior nutritional benefits in

16   its Product and offer consumers increased value for its premium price, Mead

17   Johnson instead chose to engage in a concerted effort to disparage the goods of its

18   competitors by using false or deceptive representations of fact in an effort to

19   mislead consumers into believing that its Product contains a unique blend of

20   nutrients, when in fact it contains the same nutrients in the same quantities as other,

21   less expensive brands offered by its competitors, including private labels and store

22   brands.

23   **Mead Johnson's Deceptive Product Packaging and Labeling**

24   18. Since at least 2008, Mead Johnson's Product packaging and labeling

25   claimed that "LIPIL® is a blend of DHA and ARA, important nutrients also found

26   in breast milk that promote brain and eye development."

27

28   **CLASS ACTION COMPLAINT**

-4-

1  The packaging and labeling claims that "Enfamil® LIPIL® is "clinically proven to Improve
2  Visual & mental Development." 'This exclusive formula is available only from the Enfamil
3  brand."

4      19. Through the above statements on the Product packaging and labeling,
5  Mead Johnson uniformly represented, either expressly or by implication, that the
6  Product was the only infant formula product that contained DHA and ARA and that
7  the Product was the only infant formula that was clinically proven to improve brain
8  and eye function in infants.

9      20. These representations are deceptive for multiple reasons. First, in fact,
10  numerous other brands of infant formula, including lower-priced store brands,
11  contain DHA and ARA in amounts equal to or greater than those contained in Mead
12  Johnson's Product and are no less effective than Mead Johnson's Product in
13  promoting brain and eye development in infants. Moreover, as detailed below, the
14  DHA and ARA in Mead Johnson's Product are the same as the DHA and ARA
15  included in store brands and, in fact, are provided by the same ingredient supplier.

16      21. Mead Johnson fails to disclose to consumers in the Spanish backside of its labeling
17  the material facts (necessary to make their other statements not misleading) that: 1) the
18  formulation of its Product has changed 19 times since its purported ability to promote brain
19  and eye development was clinically tested, 2) the testing in question only compared the
20  Product (i.e., Enfamil® with LIPIL®) to a prior formulation of Enfamil® without
21  DHA and ARA and no other brands, and 3) the testing in question actually
22  establishes that any infant formula product with the same levels of DHA and ARA
23  as that in Mead Johnson's Product would be equally effective in promoting brain
24  and eye development in infants. *See* Exhibit A

25  **Mead Johnson's Other Promotional Materials Reinforce The**
26  **Deceptive Statements On Its Packaging and Labeling**

27      22. The deceptive statements made on Mead Johnson's packaging and

-5-
28  CLASS ACTION COMPLAINT

1  labeling were part of a cumulative, long-term campaign of deceptive advertising

2  and misrepresentations to consumers of its Product. Since at least 2008, the

3  deceptive statements made on Mead Johnson's product packaging and labeling

4  were reinforced in other promotional materials disseminated to consumers.

5      23. For example, a print advertisement disseminated by Mead Johnson

6  during the relevant time period similarly claimed that "Only Enfamil has LIPIL, our

7  blend of DHA and ARA, important nutrients found in breast milk," and that "it's

8  the only formula shown in published independent clinical studies to **[i]mprove**

9  **brain development** [and] **[i]mprove eye development**."

10      24. Another example of a print advertisement disseminated by Mead

11  Johnson during the relevant time period read as follows: "So choose Enfamil

12  LIPIL—the only infant formula that's clinically shown to improve vision."

13  The same advertisement contained an image labeled "Visual acuity at 12 months" divided into

14  two parts, one part blurry, and labeled "20/41 Vision—Without LIPIL" and the

15  other part clear and labeled "20/28 Vision—with LIPIL."

16      25. In addition, during the relevant time period, on Mead Johnson's

17  website dedicated to the Product, www.enfamil.com, there was a Product FAQ link

18  that contained the following statements:

19  "Q: What are fatty acids? Why are they important for my baby's

20  development?"

21  "A: … Enfamil has LIPIL, our blend of DHA and ARA, important

22  nutrients that promote brain and eye development."

23  ***

24  "Q: "What are DHA and ARA?"

25  "A: … Enfamil has LIPIL, our blend of DHA and ARA, important

26  nutrients also found in breast milk that promote brain and eye

27  development."

-6-

28  **CLASS ACTION COMPLAINT**

1   "Q: "How does my baby get DHA and ARA?"

2   "A: …Only Enfamil has LIPIL, a blend of DHA and ARA, important

3   nutrients that support brain and eye development."

4      26. Mead Johnson further discouraged consumers from purchasing less

5   expensive brands of infant formula by disparaging the infant formula sold by its

6   competitors in a direct mailer sent to approximately 1.6 million new mothers

7   throughout the United States between mid-2008 and mid-2009. The mailer

8   contained the following statements:

9   "It may be tempting to try a less expensive store brand, but only

10   Enfamil LIPIL is clinically proven to improve brain and eye

11   development. . . . So before you try a store brand of formula,

12   remember that a full year* of Enfamil LIPIL goes a long way to

13   nourishing the dreams you have for your little one."

14   ***

15   "En-fact: Enfamil LIPIL's unique formulation is not available in any

16   store brand."

17   ***

18   "Store brands may cost less, but Enfamil® gives your baby more."

19      27. As it does on its Product packaging and labeling, in these

20   advertisements, Mead Johnson uniformly suggests to consumers that the Product is

21   the only infant formula product that contained DHA and ARA and/or that the

22   Product was the only infant formula that was clinically proven to improve brain and

23   eye development in infants. These representations are deceptive for the reasons set

24   forth in paragraphs above.

25   **The Representations At Issue Have Already Been Found To Be**

26   **Misleading In Violation of the Lanham Act 15 U.S.C. § 1051, *et seq.***

27      28. In April 2009, Mead Johnson's competitor PBM Products, LLC

-7-

28   **CLASS ACTION COMPLAINT**

1  ("PBM"), the leading manufacturer of store brand infant formula products, filed suit

2  against Mead Johnson in the United States District Court for the Eastern District of

3  Virginia for false advertising under the Lanham Act, 15 U.S.C. § 1051, *et seq.*,

4  based on the dissemination of the mailer referenced above. Among other things,

5  PBM alleged, as Plaintiff does in this action, that Mead Johnson falsely claimed

6  that only Mead Johnson's Product was clinically proven to provide enhanced visual

7  and cognitive development and that store brands have not been so proven. PBM

8  further alleged, as Plaintiff does in this action, that Mead Johnson stated or implied

9  that store brand products do not contain DHA and ARA, when in fact many store

10  brand infant formula products do contain DHA and ARA. Indeed, as PBM alleged,

11  the DHA and ARA in PBM's infant formula products is supplied by Martek, the

12  same supplier used by Mead Johnson, and the only FDA-approved supplier of DHA

13  and ARA for use in infant formula products.

14      29. At trial, the evidence adduced the material facts that: (1) the

15  formulation of Mead Johnson's Product has changed 19 times since its purported

16  ability to promote brain and eye development was clinically tested, (2) the testing in

17  question only compared the Product (i.e., Enfamil® with LIPIL®) to a prior

18  formulation of Enfamil® without DHA and ARA and no other brands; and (3) the

19  testing in question actually establishes that any infant formula product with the

20  same levels of DHA and ARA as that in Mead Johnson's Product -- including store

21  brands -- would be equally effective in promoting brain and eye development in

22  infants.

23      30. During the course of that trial, PBM submitted two consumer surveys

24  that provide further support to Plaintiff's allegations that the representations at issue

25  were material to consumers and were likely to deceive consumers. The first survey

26  was a survey designed to determine what messages were being received by

27  consumers from the mailer, and which

28  **CLASS ACTION COMPLAINT**

-8-

1  contained several statements substantially similar to the statements set forth on the

2  Product packaging and labeling as set forth above. That survey

3  indicated that the mailer was conveying the false messages that Enfamil® LIPIL®

4  contained ingredients (particularly DHA and ARA) that are not found in store

5  brands and that clinical tests were done comparing Enfamil® LIPIL® to store

6  brands to show that Enfamil® LIPIL® provides better visual acuity – the very same

7  deceptive messages challenged in this action. A second survey designed to

8  determine the mailer's impact on consumers' purchase intent indicated that the

9  statements in the mailer had a negative impact on a consumer's likelihood to

10  consider purchasing store brand formula, thereby operating to disparage the goods

11  of Mead Johnson's competitors by the use of false or misleading representations of

12  fact.

13     31. On November 11, 2009, a jury rendered a verdict finding Mead

14  Johnson liable for false advertising under the Lanham Act and awarded PBM \$13.5

15  million. In an order dated March 12, 2010, the court found, among other things,

16  that the evidence supported a finding that claims that "only Enfamil is clinically

17  proven to improve brain and eye development in infants" – substantially similar to

18  the claim appearing on the Product packaging and labeling challenged by Plaintiff

19  in this action -- were "misleading" and held that the making of such claims should

20  be enjoined. Plaintiff in this action relied upon those statements in making the decision to

21  purchase Enfamil Lipil.

22     32. Mead Johnson's claims, either express or implied, that the Product was

23  the only infant formula product that contained DHA and ARA and that the Product

24  was the only infant formula that was clinically proven to improve brain and eye

25  function in infants are, and have already been found to be, likely to mislead or

26  confuse and convey a false or misleading impression to the reasonable consumers

27

28  **CLASS ACTION COMPLAINT**

-9-

1   targeted by Mead Johnson's advertising, that Mead Johnson's Product contained superior

2   ingredients not contained in less expensive brands, including store brands, causing consumers

3   to pay more for Mead Johnson's Product than they would have had they known that, in fact,

4   the Product is not the exclusive source of these ingredients and that less expensive store brand

5   products contain the same (if not greater) amounts of DHA and ARA.

6   **Allegations Relating to Plaintiff's Purchase of the Product**

7        33. On personal knowledge, Plaintiff purchased Mead Johnson's Product

8   for his infant on many occasions and for the last time in November 2010 from a Walgreens

9   store located in San Francisco. He visited the "Enfamil.com/espanol" website as instructed to

10  do so in the Spanish language labeling. He also relied on deceptive statements that "Esta

11  formula exclusive esta disponible solamente en la marca Enfamil ®." Translation: "This is an

12  exclusive formula and is available only through the Enfamil brand".

13       34. On personal knowledge, the statements contained in Mead Johnson's

14  Product packaging and labeling in Spanish and English as set forth in detail above were a

15  substantial factor in Plaintiff's deciding to purchase the Product rather than similar but less

16  expensive store brand products such as those offered by Walgreens. Specifically, prior to the

17  time he purchased the Product in November 2010, Plaintiff had read the claims on the

18  Product's packaging and labeling detailed above in both Spanish and English.

19  On personal knowledge, these claims on the Product's packaging and

20  labeling were material to him and reasonably led him to believe that the Product was

21  unique in terms of the presence and levels of DHA and ARA as compared to less

22  expensive store brands.

23       35. Plaintiff was reasonable in believing Mead Johnson's representations

24  in making purchasing decisions, given Mead Johnson's reputation as a reliable

25  company with a specialized expertise in infant nutrition.

26       36. On personal knowledge, as a result of Mead Johnson's deceptive acts

27  and practices, Plaintiff was misled into purchasing the Product and paying

28                                           -10-
    **CLASS ACTION COMPLAINT**

1  substantially more (approximately twice as much) than he would have paid for

2  comparable products available from other companies. He has thereby suffered

3  injury in fact and a loss of money or property as a result of Mead Johnson's

4  conduct. Had the true facts been accurately disclosed to him, he would not have

5  purchased the Product at the prices that he did and would have purchased one of

6  the less expensive but comparable competitor brands available on the market that

7  Mead Johnson had disparaged through its false and misleading representations of

8  fact.

9  **V. CLASS ALLEGATIONS**

10  37. Pursuant to F.R.C.P. 23, Plaintiff brings this action on behalf of himself

11  and a Class of persons comprised of all Spanish language consumers who purchased the

12  Product for personal, family or household purposes since January 1, 2006 to the present.

13  Excluded from the Class are: (1) Mead Johnson and its subsidiaries and affiliates; (2) all

14  persons who make a timely election to be excluded from the Class; and (3) the judge(s) to

15  whom this case is assigned and any immediate family members thereof.

16  38. Based on the annual sales of Mead Johnson's Product and the

17  popularity of the Product, the number of purchasers of the Product would likely be

18  in the many thousands of individual consumers, thereby making individual joinder

19  impracticable. The Class is therefore so numerous that joinder of all members

20  would be impracticable. In addition, Mead Johnson's advertising and promotional

21  practices as detailed above were supplied uniformly to members of the Class

22  throughout the relevant time period, so that the questions of law and fact detailed

23  herein are common to all members of the Class. All Class members were and are

24  similarly affected by having purchased the Product for its intended and foreseeable

25  purpose as promoted, marketed, advertised, packaged and labeled by Mead Johnson

26  and as set forth in detail above. Questions of law and fact common to the Class

27  therefore exist and predominate over questions affecting only individual members,

-11-

28  **CLASS ACTION COMPLAINT**

1 | including, *inter alia*:

2 | (a) Whether Mead Johnson's acts and practices in

3 | connection with the promotion, marketing, advertising, packaging,

4 | labeling, distribution and sale of the Product as set forth above were

5 | unlawful, deceptive or unfair in any respect, thereby violating

6 | California Business and Professions Code § 17200, *et seq.*, California

7 | Business and Professions Code § 17500, *et seq.*, and California Civil

8 | Code § 1750, *et seq.*;

9 | (b) Whether Mead Johnson misrepresented or omitted

10 | material facts in connection with the promotion, marketing,

11 | advertising, packaging, labeling and sale of the Product that were

12 | necessary to disclose in order to make their other disclosures of

13 | material facts not misleading for want of disclosure of such omitted

14 | facts or which disparaged the goods of its competitors as set forth in

15 | detail above;

16 | (c) Whether Mead Johnson breached warranties in the sale

17 | of the Product;

18 | (d) Whether Mead Johnson's acts and practices in

19 | connection with the promotion, marketing, advertising, packaging,

20 | labeling and sale of the Product unjustly enriched Mead Johnson at

21 | the expense of, and to the detriment of, Plaintiff and other Class

22 | members; and

23 | (e) Whether Mead Johnson's conduct as set forth above

24 | injured consumers and if so, the extent of such injury.

25 |     39. The claims asserted by Plaintiff in this action are typical of the claims

26 | of other Class members as his claims arise from the same course of conduct by

27 | Mead Johnson as detailed above, and the relief he seeks is common to other Class

-12-

28 | **CLASS ACTION COMPLAINT**

1  members.

2      40. Plaintiff will fairly and adequately represent and protect the interests

3  of the Class members. Plaintiff has retained counsel competent and experienced in

4  both consumer protection and class action litigation.

5      41. Certification of this class action is appropriate under F.R.C.P. 23(b)(2)

6  and (3). The questions of law or fact common to the Class members as detailed

7  above predominate over questions of law or fact affecting only individual members.

8  This predominance makes class litigation superior to any other methods available

9  for the fair and efficient group-wide adjudication of these claims. Absent a class

10  action remedy, it would be highly unlikely that other Class members would be able

11  to protect their own interests because the cost of litigation through individual

12  lawsuits would exceed any expected recovery. Further, given the large number of

13  consumers of the Product, allowing individual actions to proceed in lieu of a class

14  action would run the risk of yielding inconsistent and conflicting adjudications.

15  Certification is also appropriate because Mead Johnson has acted or refused to act,

16  and continues to act, on grounds generally applicable to the Class, thereby making

17  appropriate final injunctive relief with respect to the Class as a whole.

18      42. A class action is an appropriate method for the group-wide

19  adjudication of this controversy in that it will permit a large number of claims to be

20  resolved in a single forum simultaneously, efficiently, and without the unnecessary

21  hardship that would result from the prosecution of numerous individual actions and

22  the duplication of discovery, effort, expense and burden on the courts that such

23  individual actions would engender. The benefits of proceeding as a class action,

24  including providing a method for obtaining redress for claims that would not be

25  practical to pursue individually, outweigh any difficulties that might be claimed

26  with regard to the management of this action.

27                    **CAUSES OF ACTION**

-13-

28  **CLASS ACTION COMPLAINT**

1

2

**COUNT ONE**
**Violation of California Business & Professions Code § 17200 et. seq.**
**[The Unfair Competition Act]**
**(All Defendants)**

3

4

43. Plaintiff repeats and realleges all preceding paragraphs as if fully set
forth herein.

5

6

7

8

9

10

11

12

44. This cause of action is brought to redress Mead Johnson's unlawful business acts
and practices pursuant to California Business and Professions Code § 17200, *et seq.* based on
Mead Johnson's violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the California
Sherman Food, Drug and Cosmetics Law, California Health & Safety Code § 109875, *et seq.*
(the "Sherman Law"), Business And Professions Code § 17500, *et seq.* (the "False
Advertising Law" or "FAL"), the Consumers Legal Remedies Act, California Civil Code §
1750, *et seq.* (the "CLRA") and systematic breach of warranty. Plaintiff reserves the right to
identify additional violations of laws as circumstances and further investigation warrants.

13

14

15

16

45. As detailed above, the representations at issue
here have already been found to be misleading in violation of the Lanham Act.
These representations are therefore also an unlawful business practice pursuant to California
Business & Professions Code § 17200, *et seq.*

17

18

19

20

21

22

23

24

25

26

27

46. Mead Johnson's advertising, packaging, labeling, distributing and
selling of the Product violated the Sherman Law, which declares, in relevant part,
that any food is misbranded if its labeling is false or misleading and further
provides that it is unlawful for any person to misbrand any food or sell any
misbranded food. Cal. Health & Saf. Code, § 110765. The Sherman Law defines a "person"
as "any individual, firm, partnership, trust, corporation, limited liability company, company,
estate, public or private institution, association, organization, group, city, county, city and
county, political subdivision of this state, other governmental agency within the state, and
any representative, agent, or agency of any of the foregoing." Cal. Health & Saf.
Code § 109995. Mead Johnson is a corporation and, therefore, a "person" within

28

-14-

**CLASS ACTION COMPLAINT**

1  the meaning of the Sherman Law.

2  47. As set forth in detail above, Mead Johnson advertised, packaged,
3  labeled, distributed and sold the Product as the only infant formula product that
4  contained DHA and ARA and as the only infant formula product that was clinically
5  proven to improve brain and eye function in infants.

6  48. Both of these claims are false and misleading for the reasons set forth
7  above. In fact, other brands of infant formula, including lower-priced store brands,
8  contain DHA and ARA in amounts equal to or greater than those contained in Mead
9  Johnson's Product and are no less effective than Mead Johnson's Product in
10  promoting brain and eye development in infants. Moreover, Mead Johnson failed
11  to disclose to consumers the material facts that: (1) the formulation of its Product
12  has changed 19 times since its purported ability to promote brain and eye
13  development was clinically tested, (2) the testing in question only compared the
14  Product (i.e., Enfamil® with LIPIL®) to a prior formulation of Enfamil® without
15  DHA and ARA and no other brands, and (3) the testing in question actually
16  establishes that any infant formula product with the same levels of DHA and ARA
17  as that in Mead Johnson's Product would be equally effective in promoting brain
18  and eye development in infants.

19  49. Mead Johnson's business acts and practices are also unlawful under
20  the CLRA, the FAL, and involve a systematic breach of warranty, for the reasons
21  detailed more fully herein.

22  50. The above-described unlawful business acts and practices of Mead
23  Johnson present a continuing threat and reasonable likelihood of deception to
24  members of the Class in that Mead Johnson has systematically engaged in such acts
25  or practices by means of its continued misleading marketing, advertising,
26  packaging, labeling, distributing and selling of the Product.

27  51. As a result of the unlawful business acts practices described above,

-15-

28  **CLASS ACTION COMPLAINT**

1  Plaintiff and other members of the Class, pursuant to California Business and

2  Professions Code § 17203, are entitled to an order enjoining such conduct on the

3  part of Mead Johnson and such other orders and judgments as may be necessary to

4  disgorge Mead Johnson's ill-gotten gains by restoring to any person in interest all

5  or any excess money paid for the Product as a result of the unlawful business acts

6  and practices of Mead Johnson.

**SECOND COUNT**
**(Unfair Business Acts and Practices**
**Business and Professions Code § 17200, *et seq.*)**

7

8

9  52. Plaintiff repeats and realleges all preceding paragraphs as if fully set

10 forth herein.

11 53. Mead Johnson's acts and practices, as described above, constitute

12 unfair business acts and practices.

13 54. There is no countervailing benefit to consumers or competition by

14 deceptively promoting, marketing, advertising, packaging and labeling the Product

15 in the manner set forth above. The harm to consumers is substantial as they are

16 misled into paying more for a product that is substantially similar if not identical in

17 terms of the material characteristics focused upon by Mead Johnson in its

18 promotion of the Product. Contrary to Mead Johnson's claims that the Product is

19 superior to store brands, insofar as the presence and levels of DHA and ARA are

20 concerned, this is not the case.

21 55. The gravity of the consequences of Mead Johnson's conduct as

22 described above outweighs any justification, motive or reason therefor, particularly

23 considering the available legal alternatives that exist in the marketplace, is immoral,

24 unethical, unscrupulous, or offends established public policy, its prohibition is

25 tethered to a legislatively declared policy as reflected in the laws detailed herein,

26 and/or its conduct is substantially injurious to Plaintiff and other members of the

27 Class.

28 **CLASS ACTION COMPLAINT**

-16-

1   56. As a result of the unfair business acts practices described above,

2   Plaintiff and other members of the Class, pursuant to Business and Professions

3   Code § 17203, are entitled to an order enjoining such conduct on the part of Mead

4   Johnson and such other orders and judgments as may be necessary to disgorge

5   Mead Johnson's ill-gotten gains by restoring to any person in interest all or any

6   excess money paid for the Product.

7   **THIRD COUNT**
    **(Fraudulent Business Acts and Practices**
8   **Business and Professions Code § 17200, *et seq*.)**

9   57. Plaintiff repeats and realleges all preceding paragraphs as if fully set

10  forth herein.

11  58. Mead Johnson's acts and practices, as described above, constitute

12  fraudulent business practices under California Business and Professions Code

13  § 17200, *et seq.*

14  59. As set forth in detail above, Mead Johnson promoted, marketed,

15  advertised, packaged and labeled the Product as the only infant formula product that

16  contained DHA and ARA and as the only infant formula product that was clinically

17  proven to improve brain and eye function in infants.

18  60. For the reasons detailed above, Mead Johnson's acts and practices

19  were likely to deceive its targeted audience (parents of newborn infants) because

20  other brands of infant formula, including lower-priced store brand products, contain

21  DHA and ARA in amounts equal to or greater than those contained in Mead

22  Johnson's Product and are no less effective than Mead Johnson's Product in

23  promoting brain and eye development in infants. Moreover, Mead Johnson failed

24  to disclose to consumers the material facts that: (1) the formulation of its Product

25  has changed 19 times since its purported ability to promote brain and eye

26  development was clinically tested, (2) the testing in question only compared the

27  Product (i.e., Enfamil® with LIPIL®) to a prior formulation of Enfamil® without

28  -17-

**CLASS ACTION COMPLAINT**

1  DHA and ARA and no other brands, and (3) the testing in question actually

2  establishes that any infant formula product with the same levels of DHA and ARA

3  as that in Mead Johnson's Product would be equally effective in promoting brain

4  and eye development in infants.

5  61. As a result of the fraudulent business acts and practices described

6  above, Plaintiff and other members of the Class, pursuant to California Business

7  and Professions Code § 17203, are entitled to an order enjoining such conduct on

8  the part of Mead Johnson, and such other orders and judgments as may be

9  necessary to disgorge Mead Johnson's ill-gotten gains by restoring to any person in

10  interest all or any excess money paid for the Product as a result of the wrongful

11  conduct of Mead Johnson.

**FOURTH COUNT**
12
**(Misleading or Deceptive Advertising**
13
**Business and Professions Code § 17500, *et seq.*)**

14  62. Plaintiff repeats and realleges all preceding paragraphs as if fully set

15  forth herein.

16  63. Plaintiff asserts this cause of action based on violations of California

17  Business and Professions Code § 17500, *et seq.* resulting from Mead Johnson's

18  misleading or deceptive advertising of the Product as detailed above.

19  64. Mead Johnson offered the Product for sale to Plaintiff and other

20  members of the Class by way of commercial marketing and advertising, the

21  Internet, product packaging and labeling, and other promotional materials. These

22  materials consistently and uniformly misrepresented or omitted material facts in

23  regard to the Product being the only infant formula product that contained DHA and

24  ARA and that was clinically proven to improve brain and eye function in infants.

25  65. In fact, other brands of infant formula, including lower-priced store

26  brands, contain DHA and ARA in amounts equal to or greater than those contained

27  in Mead Johnson's Product and are no less effective than Mead Johnson's Product

-18-
28  **CLASS ACTION COMPLAINT**

1  in promoting brain and eye development in infants. Moreover, Mead Johnson
2  failed to disclose to consumers the material facts that: (1) the formulation of its
3  Product has changed 19 times since its purported ability to promote brain and eye
4  development was clinically tested, (2) the testing in question only compared the
5  Product (i.e., Enfamil® with LIPIL®) to a prior formulation of Enfamil® without
6  DHA and ARA and no other brands, and (3) the testing in question actually
7  establishes that any infant formula product with the same levels of DHA and ARA
8  as that in Mead Johnson's Product would be equally effective in promoting brain
9  and eye development in infants. Mead Johnson, in the exercise of reasonable care,
10  should have known that these statements and omissions were misleading and
11  deceptive.

12      66. Said advertisements and promotional materials come within the
13  definition of advertising as contained in California Business and Professions Code
14  § 17500, *et seq.* in that such promotional materials were intended as inducements to
15  purchase the Product and are statements disseminated to Plaintiff and other
16  members of the Class and were intended by Mead Johnson to reach and be
17  considered by members of the Class.

18      67. In furtherance of said plan and scheme, Mead Johnson has prepared
19  and distributed via commercial marketing and advertising, the Internet, product
20  packaging and labeling, and other promotional materials, statements that
21  misleadingly and deceptively represent the true nature and characteristics of the
22  Product. Consumers, including Plaintiff and other members of the Class, were
23  among the intended targets of such representations.

24      68. In disseminating the misleading and deceptive statements detailed
25  above to consumers, including Plaintiff and members of the Class, Mead Johnson
26  was and is likely to deceive reasonable consumers targeted by such conduct,
27  including Plaintiff and other members of the Class, by misleading them as to

28  **CLASS ACTION COMPLAINT**

-19-

1 | material characteristics, uses and benefits of the Product, and by disparaging the

2 | goods offered by its competitors based on false or misleading representations of

3 | fact, in violation of California Business and Professions Code § 17500, *et seq*.

4 | 69. As a result of the above violations of California Business and

5 | Professions Code § 17500, *et seq.*, Plaintiff and the Class, pursuant to California

6 | Business and Professions Code § 17535, are entitled to an order of this Court

7 | enjoining such conduct on the part of Mead Johnson, and such other orders and

8 | judgments as may be necessary to disgorge Mead Johnson's ill-gotten gains by

9 | restoring to any person in interest all or any excess money paid for the Product as a

10 | result of the wrongful conduct of Mead Johnson.

11

12 | **PRAYER FOR RELIEF**

13 | WHEREFORE, Plaintiff, on behalf of herself and the members of the class,

14 | prays for judgment against the Defendants, jointly and severally, as follows:

15 |     a. That the Court certify a Nationwide Class of purchasers of Enfamil Lipil.

16 |     b. A declaration that Defendants have engaged in unlawful, unfair, and

17 |        deceptive business acts and practices in violation of California Business &

18 |        Professions Code § 17200 *et seq*.,

19 |     c. Damages under the Consumer Legal Remedies Act;

20 |     d. Consequential and Compensatory Damages;

21 |     e. That Defendants, their agents, servants, and employees, and all persons

22 |        acting, directly or indirectly, in concert with them, be ordered to restore all

23 |        funds to each member of the class acquired by means of any act of practice

24 |        declared by this Court to be unlawful or to constitute unfair competition

25 |        under Section 17200 *et seq*. of the California Business & Professions Code.

26 |     f. That Defendants be ordered to make restitution to Plaintiff and each and

27 |        every member of the class due to their unfair competition, including

28 | **CLASS ACTION COMPLAINT**

-20-

1  disgorgement of their wrongfully obtained revenues, earnings, profits and

2  compensation pursuant to California Business & Professions Code,

3  Sections 17203 and 17204;

4  g.  Restitution based on unjust enrichment;

5  h.  A preliminary and/or permanent injunction enjoining defendants and their

6  respective successors, agents, servants, officers, directors, employees and

7  all persons acting in concert with them from pursuing the policies, acts, and

8  practices complained or herein and prohibiting Defendants from continuing

9  such unfair and illegal business acts;

10  i.  For pre-judgment and post-judgment interest at the highest legal rate, from

11  and after the date of service of this Complaint;

12  j.  For reasonable attorneys' fees and costs of suit as permitted by law,

13  including but not limited to Cal. Code of Civ. Proc. Section 1021.5;

14  k.  That Defendants acted in a willful and malicious manner and should be

15  ordered to pay punitive damages in an amount to be determined at trial; and

16  l.  For such other and further relief as the Court may deem just and proper.

17  **JURY TRIAL DEMAND**

18  Plaintiff hereby demands a trial by jury for all issues so triable.

19

20  Dated: December 16, 2010                    Respectfully submitted,

21

22                                    By:  /s/ Julio J. Ramos
                                           JULIO J. RAMOS
                                           LAW OFFICES OF JULIO J. RAMOS
23                                         35 Grove Street, Suite 107
                                           San Francisco, California 94102
24                                         Telephone:      (415) 948-3015
                                           Facsimile:      (415) 396-7321
25
                                           ATTORNEY FOR PLAINTIFFS
26

27
                                    -21-
28  **CLASS ACTION COMPLAINT**

*Para saber más acerca de cómo se han medido los mejoramientos del desarrollo en los bebés que toman Enfamil® LIPIL®, visite el sitio de Enfamil.com/improvement.*

*Si usted decide usar una fórmula para bebés, pregúntele al doctor de su bebé acerca de los numerosos beneficios de Enfamil LIPIL.*

**Si usted tiene preguntas, estamos aquí para prestarle servicios.** Para llamadas gratuitas, llámenos al 1-800-222-9123 de 8 am a 4:30 pm. Hora Central de lunes a sábado. **O visítenos en: enfamil.com/espanol**

## INSTRUCCIONES PARA LA PREPARACIÓN Y EL USO

**La salud de su bebé depende de lo cuidadosamente que usted siga estas indicaciones.**

Higiene apropiada, preparación, dilución, uso y almacenamiento son importantes al preparar la fórmula para bebés. Las fórmulas para bebés en polvo no están estériles y no deben de darse a bebés prematuros o a bebés que puedan tener problemas de inmunidad a menos que sean dirigidos y supervisados por el doctor de su bebé. Pregúntele al doctor de su bebé cuál fórmula es apropiada para su bebé.

Pregúntele al doctor de su bebé sobre la necesidad de usar agua hervida para la mezcla y la necesidad de hervir el agua los detalles limpia, las botellas y la unidad del chupete antes de usarlos.

1. Lave sus manos completamente con agua y jabón antes de preparar la fórmula.



2. Vierta la cantidad deseada de agua en la botella. Añada el polvo.

3. Tape la botella y AGÍTELA BIEN.

Use el cuadro siguiente para determinar las cantidades correctas de agua y de producto en polvo. Use la medida en la lata para medir el polvo. Guarde la medida **SECA** en esta lata.

| Para Preparar* | Agua | Producto en Polvo |
|---|---|---|
| Biberón de 2 onzas | 2 onzas líquidas | 1 medida rasa sin compactar (8.5 g) |
| Biberón de 4 onzas | 4 onzas líquidas | 2 medidas rasas sin compactar (17 g) |
| Biberón de 8 onzas | 8 onzas líquidas | 4 medidas rasas sin compactar (34 g) |

*Cada medida agrega cerca de 0.2 onzas líquidas a la cantidad de la fórmula preparada. Esto puede causar graves quemaduras.

**Advertencia:** No use un horno de microondas para calentar la fórmula. Esto puede causar graves quemaduras.

**La leña en seguir estas instrucciones puede resultar en daños severos.**

**Una vez preparada, la fórmula para bebés se puede echar a perder rápidamente.** Alimente al bebé inmediatamente, o tape y refrigere a 35-40°F (2-4°C) no más de 24 horas. No use la fórmula preparada que ha estado sin refrigeración por más de un total de 2 horas. No congele la fórmula preparada.

Después de que la alimentación comienza, se refrigere la botella la alimentación. Usted debe de usarla antes de que transcurra una hora de alimentar o bótela.

**Almacenamiento del Polvo:** Las latas deben guardarse a temperatura ambiental. Después de abrir una lata, manténgala muy bien tapada, guárdela en un área seca y utilice el contenido dentro de un mes de abrir la lata. No congele el polvo y evite el calor excesivo.

**USE ESTE PRODUCTO ANTES DE LA FECHA INDICADA EN EL EXTREMO DE LA LATA.**



# Enfamil®
*Una mezcla de DHA y ARA*

# LIPIL®

*Confiada por Mamás y Pediatras*

*Fórmula para Bebés*
con Base de Leche en Polvo
con Hierro

Para bebés 0-12 Meses

**25.7 ONZAS (729 g)**

SUSTANCIAS NUTRITIVAS (Dilución Normal) por 100 Calorías (5 onzas líquidas)

PROTEÍNA
GRASA
CARBOHIDRATO
AGUA
ACEITE LINOLEICO

VITAMINAS

MINERALES
CALCIO
FÓSFORO
MAGNESIO
HIERRO
CINC
MANGANESO

INGREDIENTES:

Mead Johnson
Nutrition

MEAD JOHNSON & COMPANY, LLC, EVANSVILLE, IN 47721 EE. UU.

Rinde: 188 onzas líquidas — 31 biberones (6 onzas) o 23 biberones (8 onzas)